JAMES VAN HORN ET AL. v. AMOS H. VAN HORN ET AL.

1. An action will lie for a combination or conspiracy, by fraudulent and malicious acts, to drive a trader out of business, resulting in damages.
2. The *gravamen*, in a civil action, is not the conspiracy, but the malice; the former is matter of aggravation or inducement only, in the pleading and evidence, under which one or all of the defendants may be found guilty.

---

On demurrer.    Case certified from the Essex Circuit.

The defendants, Amos H. Van Horn and Casper Soer, Jr., were summoned to answer James Van Horn and Emma D. Van Horn, his wife, in tort, for a conspiracy or combination to break up the wife's separate business of selling fancy goods, on consignment, at Newark. Two firms of wholesale jobbers in fancy and millinery goods had agreed, verbally, to supply her on credit with a stock of such goods, to be sold by her on commission, limiting the total amount to $2,500. One of said firms had, in pursuance of the agreement with her, sent $500 worth of goods, which were received and placed in her store for sale, and she was daily expecting the balance. With this prefatory statement, the declaration charges, that the defendants, maliciously intending to injure and drive the said Emma D. Van Horn out of business, and into public scandal,

shame and disgrace, and to injure her in her credit and business, and to prevent her from acquiring any profit or gain therefrom, or from continuing the same, did maliciously conspire, combine and agree to prevent her from enjoying and continuing her business, and in pursuance of said conspiracy, &c., did entice into their store, in Newark, one of the plaintiff's employes, and, by artful persuasion and threats, induced her to tell where the plaintiff's stock of goods was purchased, telling her the stock would be taken from her and the business closed up; and in pursuance and in further performance of their unlawful intent and combination, endeavored to prevent the customers and friends of the plaintiff from dealings with her, by falsely and fraudulently representing to them that she would not be able to carry on her business, but would have to close up, as she was selling goods that did not belong to her, and living off the proceeds, instead of accounting therefor, and by sending threatening notes and messages to them, designed to intimidate them from having any dealings with her, and did threaten to pursue her until she was ruined; that in further pursuance of such combination, and by means of fraud and deceit, they did persuade the said firm in New York to decline to complete their contract, and did prevail on them, by means of corrupt, fraudulent and deceitful representations and statements as to the personal and business character and standing of the plaintiff, to remove the stock already supplied her, and refuse to deliver her other goods as agreed for, leaving her entirely without any stock to sell, or customers to purchase from her; by means whereof she was left without stock and credit with the said firms, and could not obtain goods from other parties, and was driven out of her business and occupation and deprived of the profit and livelihood which she was making and daily increasing.

To this declaration a general demurrer was filed, and joinder added.

Argued at February Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiffs, *R. H. McCarter.*

For the defendants, *Samuel Kalisch.*

The opinion of the court was delivered by

SCUDDER, J. The merely formal parts of this declaration will not be considered on the general demurrer, but the whole will be examined to determine whether it sets forth, in substance, a legal cause of action. The case has been elaborately discussed by counsel, because the principles involved may affect other cases of even greater importance than this, and lead to serious complications where actions are brought between rivals in business, or those who interfere with the ordinary course of trade to the detriment of others.

A careful consideration of the subject has led me to the conclusion, that this case is readily distinguishable from many that have been cited in the argument, and does not involve many of the questions that have been presented.

It is not necessary to consider the office of the ancient writ of conspiracy, and the process by which, in time, it was superseded by the later and more efficacious action on the case for conspiracy, and the still more modern action for malicious prosecution. Nor will it now be advantageous to show how long and difficult it was to separate the idea of a criminal conspiracy at common law, where the agreement or conspiracy was the *gravamen* of the offence, from the real complaint in a civil action, that the combination of two or more persons has enabled them to inflict a great wrong on the plaintiff. The combination or conspiracy in the latter case was, therefore, a matter of aggravation or inducement only, of which one or all might be found guilty, while in the former, it was essential to show that two or more had joined in an agreement to do an unlawful act, or to do a lawful act in an unlawful manner. The distinction is now well established, that in civil actions the conspiracy is not the *gravamen* of the charge, but may be both pleaded and proved as aggravating the wrong of which the plaintiff complains, and enabling him to recover against all

as joint tortfeasors. If he fails in the proof of a conspiracy or concerted design, he may still recover damages against such as are shown to be guilty of the tort without such agreement. *Poll. Torts* 267; *Gary* v. *Frazer*, 76 *Me.* 37; *Hutchins* v. *Hutchins*, 7 *Hill* 104; *Jones* v. *Baker*, 7 *Cow.* 445; *Barker* v. *Huntingdon*, 2 *Gray* 124.

The declaration begins in this form, and is unexceptionable in this particular. It is an action on the case, setting forth a malicious conspiracy or confederation, with the means employed to effect its purpose, and the resulting damages to the plaintiff. No further specification is required than the general terms in which it is pleaded in the declaration.

We have not presented for determination in this pleading the vexed question, whether an action will lie against a third person for the malicious procurement of the breach of a contract, if by such procurement damage was intended to result, and did result, to the plaintiff. *Lumbey* v. *Gye*, 2 *El. & B.* 216; *Brown* v. *Hall*, 9 *Q. B. Div.* 333.

In the opinion of Mr. Pollock (*ubi supra*), the difficulties in such cases disappear, or are greatly reduced, when the cause of action is considered as belonging to the class in which malice, in the sense of actual ill will, is a necessary element. Here the whole pleading is based on the malicious conduct of the defendants, in destroying the plaintiff's credit and patronage, and breaking up her business and means of livelihood.

The case is, however, further distinguished from the cases cited above, and separated from the questions of difficulty involved in some of them, because here no breach of contract is alleged. There was no binding contract between the New York firms and the plaintiff, upon which they could be sued for a breach. Where there is a suable contract between a contractor and contractee, there is difficulty, in principle, in showing privity in another, or to make the person who procures a breach of the contract the proximate cause of injury. The party who breaks the contract, for whatever cause, whether by procurement of others or of his own volition, is primarily responsible to the other party; and the procurer, it would

seem, can only be held responsible for the breach where there is malice shown to the sufferer, giving a distinct cause of action for the malice which caused the breach of the contract, resulting in damages to him.

The plaintiff, Emma D. Van Horn, it is alleged, was selling goods on consignment from others, with the expectation of greater consignments in the future. If the consignors refuse to send the goods to her, it does not appear that she could have any remedy against them. They could send or recall them at pleasure. The complaint here is, that the goods in the plaintiff's possession were recalled, and her advantageous arrangement for credit with the consignors ended, by the fraudulent and malicious act of the defendants. If she have no remedy against the defendants, she can have none against others for the wrong which she claims she has suffered.

The difference between this action and slander, is well stated in *Riding* v. *Smith*, 1 *L. R., Exch. Div.* 91, where a slander against the wife was charged as having injured the husband's business. Her name was stricken from the record, as a joint plaintiff, and the action was allowed to proceed by the husband, as a trader, carrying on business, founded on an act done by the defendant which led to loss of trade and custom by the plaintiff. It was maintainable on the ground that the injury to the plaintiff's business was the natural consequence of the words spoken, which would prevent persons resorting to the plaintiff's shop.

Upon the whole case presented in the declaration, *Mogul Steamship Co.* v. *McGregor, &c.,* 21 *Q. B. Div.* 544, *S. C.,* 23 *Q. B. Div.* 598, is important to aid in preserving the distinction between injuries caused by mere rivalries in business, without the intention of ruining the trade of the plaintiff, and those where such intent is shown with personal malice toward him.

In the first report, Lord Chief Justice Coleridge says: "It is too late to dispute, if I desired to do so, as I do not, that a wrongful and malicious combination to ruin a man in his

trade may be ground for such an action as this." In the later report, Lord Justice Fry, after a full statement of cases, says, that no mere competition carried on for the purpose of gain, and without actual malice, is actionable, even though intended to drive the rival in trade away from his place of business, and though that intention be actually carried into effect. Lord Esher, M. R., dissented. It was decided that the exclusion of the plaintiffs, rival freighters, from participation in a five per cent. rebate on freight on teas from China, not being through malice, but in competition to increase their own business, was not actionable.

The basis of action seems here to be, as stated in the declaration, the fraudulent and malicious acts of the defendant in driving the plaintiff, Emma D. Van Horn, out of her business; the statement of the means used to effect this purpose all combine to produce a single cause of action, and are not objectionable for duplicity. But, if there were duplicity in the pleadings, this is not ground for a general demurrer.

The demurrer should be overruled.