Chambers & Marshall v. Baldwin.

CASE 20—PETITION ORDINARY—JANUARY 17.

## Chambers & Marshall v. Baldwin.

APPEAL FROM MASON CIRCUIT COURT.

| 91 | 121 |
| 91 | 137 |
| 91 | 121 |
| 117 | 77 |
| i118 | 668 |
| 91 | 121 |
| f132 | 204 |

1. MALICIOUSLY PROCURING ONE TO BREAK HIS CONTRACT WITH ANOTHER.—One party to a contract can not maintain an action against a person who has maliciously advised and procured the other party to break it, unless the person procuring the breaking of the contract did so by coercion or deception, and thus caused the party to break the contract against his will or contrary to his purpose. The only exception to this rule is where apprentices, menial servants and others whose sole means of living is by manual labor, are enticed to leave their employment, and this exception exists by virtue of statute.

Plaintiffs made a contract with W for the purchase and delivery of a crop of tobacco at an agreed price. Defendant, knowing of the

contract, and that W was insolvent, did, maliciously and on account of his ill-will to plaintiff, and to benefit himself, procure W to break his contract. But for defendant's malicious advice and procurement . W would have performed his contract. *Held*—That these facts do not entitle plaintiffs to maintain an action against defendant to recover the damages sustained by the breaking of the contract.

2. SAME.—An act lawful in itself can not become actionable solely because it was done maliciously.

WALL & WORTHINGTON, COCHRAN & SON FOR APPELLANTS.

A man who maliciously procures another to break his contract with a third person is responsible to such third person for the damages thereby sustained by him. (Addison on Torts, pp. 10, 36; Pollock on Torts, pp. 455, 452, 454, 269; Lumley v. Gye, 2 E. & B., 216; Bowen v. Hall, 6 Q. B. Div., 333; Green v. Button, 2 C. M. & R., 707; Ashby v. White, 2 Smith's L. Cas., 455; Cooley on Torts, 497, 280; Benton v. Pratt, 2 Wend., 385; Rice v. Manley, 66 N. Y., 82; Walker v. Cronin, 107 Mass., 555; Jones v. Stanley, 76 N. C., 355; Haskins v. Royster, 70 N. C., 601; Kimball v. Hannon, 34 Md., 407; Ashley v. Dixon, 48 N. Y., 430; Pomeroy on Remedies, 2; Chesley v. King, 74 Me., 164; Boughner v. Black, 83 Ky., 521; Bishop on Non-contract Law, sec. 493; Jones v. Stanley, 76 N. C., 355; Bigelow on Fraud, 555; Walden v. Conn, 84 Ky., 312; Anson on Contracts, 204; Tarlton v. McGawley, Peake, 270; Pollock on Torts, 270, 455.)

WADSWORTH & SON FOR APPELLEE.

Brief not in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The cause of action stated in the petition of appellants is, in substance : That as partners doing business under the firm name of Chambers & Marshall, they made a contract with one Wise, whereby he sold and agreed to deliver to them in good order, during delivery season of 1877, his half of a crop of tobacco, then undivided, which he had raised on shares upon the farm of appellee, in consideration whereof they promised to pay on delivery at the rate of five cents per pound ; that they were ready, able and willing to receive and

pay for the tobacco as and at the time agreed on, and demanded of him compliance with the contract, but he had already delivered it to appellee and Newton Cooper, tobacco dealers, and then notified appellants he would not deliver it to them, and they might treat the contract as broken and at end ; that appellee knew of the existence of said contract, but maliciously, on account of his personal ill-will to Chambers, one of appellants, and with design to injure by depriving them of profit on their purchase, and to benefit himself by becoming purchaser in their stead, advised and procured Wise, who would else have kept and performed, to break the contract whereby they have been damaged —————— dollars; that he, Wise, was at the time known by appellee to be, and now is, insolvent; so, being without other redress, they bring this action.

Appellee is alleged to have been actuated to do the act complained of by ill-will to one of appellants only, which, however, to avoid confusion, we will treat as a malicious intent to injure both; and also by a design to benefit himself by becoming purchaser of the tobacco for the firm of which he was a member. And thus two questions of law arise on demurrer to the petition : First, whether one party to a contract can maintain an action against a person who has maliciously advised and procured the other party to break it; second, whether an act lawful in itself can become actionable solely because it was done maliciously.

As appellee, being no party to the contract, did not, nor could himself, break it, his wrong, if any, was in advising and procuring Wise to do so. Consequently, while the remedy of appellants against him, Wise, was

by action *ex contractu*, recovery being limited to actual damage sustained, their action against appellee is, and could be in no other than form *ex delicto*, recovery, if any at all, not being so limited. Nevertheless, in Addison on Torts, volume 1, p. 37, it is said: "Maliciously inducing a party to a contract to break his contract to the injury of the person with whom the contract was made creates that conjunction of wrong and damage which supports an action."

The authority cited in support of the proposition thus stated without qualification is the English case of Lumley v. Gye, 2 Ell. & Bl., 228, decided in 1853, followed by Bowen v. Hall, decided in 1881, and reported in 20 Amer. Law Reg. (N. S.), 578, though it is proper to say there was a dissenting opinion in each case.

The action of Lumley v. Gye was in tort, the complaint being that the defendant maliciously enticed and procured a person under a binding contract to perform at plaintiff's theatre, to refuse to perform and abandon the contract. The majority of judges held, and the case was decided upon the theory, that remedies given by the common law in such cases are not, in terms, limited to any description of servants or service, and the action could be maintained upon the principle laid down in Comyn's Digest, that "in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case, to be repaired in damages." The position of Justice Coleridge was, to the contrary, that as between master and servant there was an admitted exception to the general rule of the common law confining rem-

edies by action to the contracting parties, dating from the Statute of Laborers, passed in 25 Edward III, and both on principle and authority limited by it; and that "the existence of intention, that is, malice, will in some cases be an essential ingredient in order to constitute the wrongfulness and injurious nature of the act; but it will neither supply the want of the act itself or its hurtful consequences."

We have been referred to some American cases as being in harmony with the two cases mentioned. In Walker v. Cronin, 107 Mass., 555, it was held that where a contract exists by which a person has a legal right to continuance of services of workmen in business of manufacturing boots and shoes, and another knowingly and intentionally procures it to be violated, he may be held liable for the wrong, although he did it for the purpose of promoting his own business. But it was not alleged the defendant in that case had any such purpose in procuring the persons to leave and abandon the employment of the plaintiff, the real grievance complained of being damage by the wanton and malicious act of defendant and others. In Haskins v. Royster, 70 N. C., 601, it was held that if a person maliciously entices laborers or croppers on a farm to break their contract and desert the service of their employer, damages may be recovered against him. But both those cases relate to rights and duties growing out of the relation of employer and persons agreeing to do labor and personal service, and do not apply here, except so far as the decisions rest upon other grounds than the Statute of Laborers. In Jones v. Stanly, 76 N. C., 355, it was, however, held

that the same reasons which controlled the decision rendered in Haskins v. Royster "cover every case in which one person maliciously persuades another to break *any* contract with a third person; it is not confined to contracts for service." But we have not seen any other case in which the doctrine is stated so broadly.

Chesley v. King, 74 Me., 164, we do not regard at all decisive, because the court went no farther than to say they were inclined to the view that there may be cases where an act, otherwise lawful, when done for the sole purpose of damage to a person, without design to benefit the doer or others, may be an invasion of the legal rights of such person.

Cooley on Torts, 497, agreeing with Justice Coleridge, says: "An action can not, in general, be maintained for inducing a third person to break his contract with the plaintiff, the consequence after all being only a broken contract, for which the party to the contract may have his remedy by suing upon it." And it seems to us that rule harmonizes with both principle and policy, and to it there can be safely and consistently made but two classes of exception; for, as to make a contract binding, the parties must be competent to contract and do so freely, the natural and reasonable presumption is, that each party enters into it with his eyes open, and purpose and expectation of looking alone to the other for redress in case of breach by him. One such exception was made by the English Statute of Laborers to apply where apprentices, menial servants, and others whose sole means of living was by manual labor, were enticed to leave

Chambers & Marshall v. Baldwin.

their employment, and may be applied in this State in virtue of and as regulated by our own statutes. The other arises where a person has been procured against his will or contrary to his purpose, by coercion or deception of another, to break his contract. (Green v. Button, 2 Cromp. M. & R., 707; Ashley v. Dixon, 48 N. Y., 430.)

But as Wise was not induced by either force or fraud to break the contract in question, it must be regarded as having been done of his own will and for his own benefit; and his voluntary and distinct act, not that of appellee, being the proximate cause of damage to appellants, they, according to a familiar and reasonable principle of law, can not seek redress elsewhere than from him. That an action on the case will lie whenever there is concurrence of actual damage to the plaintiff and wrongful act by the defendant is a truism, yet unexplained, misleading. The act must not only be the direct cause of the damage, but a legal wrong, else it is *damnum absque injuria*. But whether a legal wrong has been done, for which the law affords reparation in damages, depends upon the nature of the act, and can not be consistently or fitly made to depend upon the motive of the person doing it; for an act may be tortious, and consequently actionable, though not malicious nor even willful. If it was not so, there could be no reparation for an act of pure negligence, though ever so hurtful in its effects. And it is just as plain that an act which does not of itself amount to a legal wrong without can not be made so by a bad motive accompanying it; for there is no logical process by which a lawful

act done in a lawful way can be transformed or not into a legal wrong, according to the motive, bad or good, actuating the person doing it.

The proposition is clearly and forcibly stated in Jenkins v. Fowler, 24 Pa. St., 308, as follows: "Malicious motives make a bad case worse, but they can not make that wrong which, in its own essence, is lawful. When a creditor who has a just debt brings a suit or issues execution, though he does it out of pure enmity to the debtor, he is safe. In slander, if the defendant proves the words spoken to be true, his intention to injure the plaintiff by proclaiming his infamy will not defeat justification. One who prosecutes another for a crime need not show he was actuated by correct feelings, if he can prove that there was good reason to believe the charge was well founded. In short, any transaction which would be lawful if the parties were friends can not be made the foundation of an action merely because they happen to be enemies. As long as a man keeps himself within the law by doing no act which violates it, we must leave his motives to Him who searches hearts."

In Frazier v. Brown, 12 Ohio St., 294, the cause of action stated was diversion, with malicious intent by the defendant, of subterranean water on his own land from adjoining land of the plaintiff. But it was held there could be no recovery, because, as said by the court, "the act done, to wit, the *using* of one's own property, being lawful in itself, the motive with which it is done, whatever it may be as a matter of conscience, is in law a matter of indifference." In Chatfield v. Wilson, 28 Vt., 49, the action was for the

same cause substantially, and the language of the court was: "An act legal in itself, and which violates no right, can not be made actionable on account of the motive which induced it." In Mahan v. Brown, 13 Wend., 261, the complaint was that the defendant wantonly and maliciously erected on his own premises a high fence near to and in front of plaintiff's window, without benefit to himself, and for the sole pur- pose of annoying the plaintiff, thereby rendering her house uninhabitable. But it was held the action would not lie, because, no legal right of the plaintiff having been infringed, the defendant had not so used his property as to injure another, and whether his motive was good or bad she had no legal cause of complaint. To the same effect is the decided weight of authority in the United States. (Adler v. Fenton, 24 Howard, 412; Phelps v. Nowlen, 72 N. Y., 39; Ben- jamin v. Wheeler, 8 Gray, 410; Glendon Iron Co. v. Uhler, 75 Pa. St., 467; Auburn P. R. Co. v. Douglass, 9 N. Y., 444.)

Upon neither principle nor authority could this ac- tion have been maintained if the same thing it is complained appellee did had been done by a person on friendly terms with appellant, Chambers, or by a stranger, though he might have profited by the pur- chase to the damage of appellants; for, competition in every branch of business being not only lawful, but necessary and proper, no person should or can, upon principle, be made liable in damages for buying what may be freely offered for sale by a person having the right to sell, if done without fraud, merely because there may be a pre-existing contract between the seller

and a rival in business, for a breach of which each party may have his legal remedy against the other; nor, the right to buy existing, should it make any difference, in a legal aspect, what motive influenced the purchaser. Competition frequently engenders not only a spirit of rivalry but enmity, and if the motive influencing every business transaction that may result in injury or inconvenience to a business rival was made the test of its legality, litigation and strife would be vexatiously and unnecessarily increased, and the sale and exchange of commodities very much hindered. As pertinently inquired in Auburn P. R. Co. v. Douglass: "Independently of authority, if malignant motive is sufficient to make a man's dealings with his own property, when accompanied by damage to another, actionable, where is this principle to stop?" And as correctly said by Lord Coleridge in Bowen v. Hall: "The inquiries to which this view of the law (making an act lawful or not, according to motive) would lead are dangerous and inexpedient inquiries for courts of justice; judges are not very fit for them, and juries are very unfit."

In our opinion, no cause of action is stated in the petition, and the demurrer was properly sustained.

Judgment affirmed.