RANDALL, Guardian, Appellant, vs. LONSTORF and others, imp., Respondents.

*October 25—November 14, 1905.*

(1) *Pleading: Matter in abatement: Action by guardian.* (2–4) *Conspiracy: When civil action lies: Alienation of husband's affection, etc.: Criminal conspiracy.*

1. In an action by a general guardian in his own name, the objection that the cause of action is one in favor of the ward alone goes only to the competency of the guardian to maintain the

action and, being in abatement only, is not available after de-
fendant has pleaded in bar.

2. A civil action may be maintained against conspirators for the
damage resulting from their acts done in pursuance of a crim-
inal conspiracy, even though it could not be maintained for the
same acts done, without a conspiracy, by one person. *Martens
v. Reilly*, 109 Wis. 464, explained.

3. A conspiracy to prevent a wife from performing her marital
duties, from living with her husband, from receiving from him
the support to which she is entitled, from obtaining a divorce
in her home jurisdiction which should fully protect her rights,
and, by reducing her to penury, to compel her to allow her hus-
band to obtain a divorce upon false and fraudulent allegations
in a foreign jurisdiction, is a criminal conspiracy within sec.
4466a, Stats. 1898.

4. The object sought by such conspiracy being unlawful and (un-
der sec. 4587c, Stats. 1898) criminal, and the means employed
being unlawful and (under sec. 4466a) criminal, a civil action
may be maintained for the resulting damage, even though there
might be no redress for the same injuries inflicted by a single
person.

APPEAL from an order of the circuit court for Milwaukee
county: ORREN T. WILLIAMS, Circuit Judge. *Reversed*.

This is a civil action for damages resulting from an alleged
unlawful conspiracy. The complaint, after alleging the due
appointment and qualification of the plaintiff as guardian of
one Emma Lonstorf, an insane person, and the adjudication
of her insanity on July 10, 1903, alleges in substance that
said Emma Lonstorf and the defendant Otto R. Lonstorf were
married July 16, 1894, and lived happily together several
years in Milwaukee; that said Otto is of a weak and irreso-
lute character, and that the defendant *Margaret Lonstorf* is
the widow of one Nicholas Lonstorf, deceased, and is a per-
son of great wealth and imperious will, and is the mother of
the other nine defendants, all of whom, excepting the defend-
ant *George J. Lonstorf,* are dependent upon her for sup-
port, and completely subject to her wishes; that shortly after
Emma's marriage with Otto the other defendants maliciously
conspired together for the purpose of separating said Emma

from Otto, depriving her of her support and of the necessaries of life, and inducing Otto to desert her and remain outside of the state of Wisconsin and beyond the reach of civil or criminal process issuing from the courts of said state; that in pursuance of this conspiracy they afterwards secured Otto's discharge from various places of employment, represented to him that Emma was unfaithful to him, and urged him to desert her, furnished him with large sums with which to travel abroad, and threatened that said *Margaret* would disinherit him, so that finally said Otto joined the other defendants in the execution of said unlawful conspiracy; that subsequent to the plaintiff's appointment as guardian all of the defendants continued in the prosecution of this unlawful conspiracy to keep the defendant Otto out of the state and beyond the jurisdiction of the courts of this state, and to keep Emma in destitution, and to force her to permit Otto to obtain a divorce in some foreign jurisdiction where she could not, on account of her poverty, appear or protect her rights; that in pursuance of said conspiracy said Otto commenced a divorce action in the state of Michigan, which was afterwards dropped, and after Emma's commitment to the Milwaukee Hospital for the Insane commenced a divorce action in the state of Washington in the month of December, 1903, the complaint in which action was verified by Otto and contained false statements of fact, and entirely concealed the fact of Emma's insane condition, for the purpose of imposing on said court; that the remaining defendants have assisted said Otto by advice and contributions of money in said attempt to obtain a divorce for the purpose of carrying out said conspiracy; that said Emma has now, and for a long time last past has had, a good cause of action for divorce against said Otto for wilful desertion, cruel and inhuman treatment, and failure to support; that said Emma has no property, and is supported at the Milwaukee County Hospital for the Insane as a pauper, and that by the carrying out of said conspiracy as aforesaid said

Emma has been deprived of her legal rights aforesaid, to her damage in the sum of $250,000, for which sum judgment is demanded.

The defendants, except Otto, appeared jointly and an-swered, denying all the allegations of conspiracy. The cause came on for trial, and a demurrer *ore tenus* to the complaint was sustained and judgment of dismissal entered, from which the plaintiff appeals.

For the appellant there was a brief by *Charles H. Phillips,* attorney, and *McElroy & Eschweiler,* of counsel, and oral argument by *F. C. Eschweiler.*

For the respondents there was a brief by *Fiebing & Killilea,* and oral argument by *H. J. Killilea.*

WINSLOW, J. While the right of the general guardian to maintain this action in his own name was not challenged in the trial court, the query was raised in this court whether the cause of action, if any, was not one in favor of the ward alone, which must be prosecuted by her and not by the guardian. Whatever might be the conclusion were the question a new one, it is foreclosed by the decision in the case of *Plath v. Braunsdorff,* 40 Wis. 107, where the exact question was raised, and it was held that the objection went only to the competency of the guardian to maintain the action, and, being in abatement only, was unavailable to the defendant after having pleaded in bar.

Proceeding to the merits, we note at the outset that both parties argued the case upon the assumption that, in order to sustain the complaint, it would or might be necessary to over-rule the decision in the case of *Lonstorf v. Lonstorf,* 118 Wis. 159, 95 N. W. 961; and we were strenuously urged upon the one side to reconsider and overrule the ruling in that case, and upon the other as strenuously to adhere to it. We do not find it necessary, however, to reconsider that decision. That was an action brought by the deserted wife against her mother-

in-law alone for the alienation of the affections of the husband and her consequent loss of *consortium* and support, and it was held, following the decision in *Duffies v. Duffies,* 76 Wis. 374, 45 N. W. 522, that such an action could not be maintained. That ruling, however, by no means necessarily or inferentially decides this case. The present action is brought to recover damages resulting from an alleged unlawful conspiracy between a number of people, and presents an entirely different question. An actionable conspiracy, as recently defined by this court, is "a combination of two or more persons for the purpose of accomplishing a criminal or unlawful object by criminal or unlawful means, or a lawful object by criminal or unlawful means." *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046. In a criminal prosecution the gist of the offense is the conspiracy itself. In a civil action the gist of the action is the damage suffered by reason of the conspiracy. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840.

It was argued by the respondent that, inasmuch as this court had held that no action could be maintained by the wife against a single person for the malicious alienation of the husband's affections, no action could be maintained against a number of persons for the same act done by them in concert, and it was said that the court had laid down that principle in the *Martens Case,* just cited. While the language of the syllabus in the last-named case may perhaps furnish some ground for this contention, examination of the opinion itself shows that no such broad rule was laid down. Upon page 472 of 109 Wis. (84 N. W. 843), the principle decided is thus stated:

"An act *legal in itself,* in that it does not offend against the criminal law and the injuries are *damnum absque injuria,* regardless of its violation of moral standards, whether such act be the one perpetrated or the means used to that end, generally, if not the subject of a civil action for damages if done by one person, is not if done by many acting in concert."

It will be readily seen that under this rule, in order that the concerted act of many should create no civil liability because the same act by one creates none, the act must be one which does not offend against the criminal law, but only violates moral standards. Whatever may be the holdings in other jurisdictions, this is the extent of the rule as adopted in this state, as is clearly shown by the discussion and conclusions reached in the *Huegin Case, supra,* where the doctrine of the English case of *Huttley v. Simmons* (1898) 1 Q. B. Div. 181, was rejected. So the question is not whether one person may alienate the husband's affections without liability to the wife, but whether the conspiracy of many to do that same thing is a violation of the criminal law, and, if so, whether damage has resulted by reason of the conspiracy.

Turning to the statute upon the subject of conspiracies, which was under consideration in the *Huegin Case,* namely, Stats. 1898, sec. 4466a, we find that it is thereby made a criminal offense for any two or more persons to combine or agree together "for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act." The first part of this section evidently was intended to cover conspiracies against another in his trade or business, but the second part just as evidently was intended to cover another and broader field, namely, conspiracies maliciously intended to coerce and constrain the action of another by compelling him to do that which is against his will, or to refrain from doing any lawful act which he desires to do. That the allegations of this complaint bring the conspiracy within this latter clause, and thus make it criminal, we can entertain no doubt. By these allegations it appears that the defendants maliciously conspired together to prevent the plaintiff from performing her marital duties, from living with

her husband, from receiving at his hands that support to which she was entitled, from obtaining a divorce in her home jurisdiction which should fully protect her rights, and, by reducing her to penury, compel her to allow her husband to obtain a divorce upon false and fraudulent allegations in a foreign jurisdiction. All these were unlawful constraints upon the plaintiff's actions and will, which the law condemns. There can be no doubt, therefore, that the conspiracy charged was a criminal conspiracy within the statute. Whether it would not be criminal at common law, in the absence of a statute, we need not consider.

So all the essentials to a civil action for conspiracy are alleged. The object sought, namely, the breaching of the marriage contract and the desertion of the wife by the husband, leaving her in destitution, was an unlawful object, within the meaning of the word "unlawful" as defined in the *Martens Case*. Under our statute (Stats. 1898, sec. 4587*c*) it was also a criminal object. The means employed were unlawful and criminal, within the terms of sec. 4466*a* of the same Statutes. It is sufficiently alleged that damage followed. There was, then, the unlawful and criminal object, the unlawful and criminal means, and the resulting damage; and it follows that a civil action lies, although there may be no redress for the same injuries inflicted by a single person. If the law could not reach and redress such wrongs as are here charged it would be impotent indeed. No such reproach can be cast upon it. It will not allow conspirators against the marriage bond and the happiness of the family to go "unwhipt of justice" any more than it will allow conspirators against a business or a profession to escape.

*By the Court.*—Order reversed, and action remanded with directions to overrule the demurrer to the complaint.