## SLEEPER v. BAKER et al.

(39 L.R.A.(N.S.) 864, 134 N. W. 716.)

**Pleading — objection to — sufficiency of.**

1. An objection to the introduction of any evidence upon the ground that the complaint does not state facts sufficient to constitute a cause of action must specially point out wherein the complaint is defective.

**Pleading — objections to introduction of evidence under — sufficiency to reach formal defects in pleading.**

2. An objection to the evidence, which is based upon and calls attention to substantial defects in a count of a complaint merely, will not reach a misjoinder of actions or formal defects in pleading.

**Pleading — objection to introduction of evidence under — misjoinder of causes.**

3. As against such a motion to exclude all of the evidence, one count, although misjoined, if otherwise stating a cause of action, will be allowed to stand.

**Conspiracy — to induce breach of contract — civil action for.**

4. The civil action of conspiracy is a tort action, and cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff the consequence at law being only a broken contract for which the party to

Note.—The general question of the liability of a person in damages to another for inducing a third party to break his contract is treated in notes in 21 L.R.A. 233; 16 L.R.A.(N.S.) 746; and 28 L.R.A.(N.S.) 615.

the contract may have his remedy by suing upon it. In order to sustain such an action, it is generally necessary that there shall be an averment and proof of the commission of an act which, if done by one alone, would at the common law constitute a ground for an action on the case. The action will not generally lie for merely inducing another to break his contract, except where direct fraud or force or coercion has been used.

Opinion filed December 19, 1911.

Appeal from District Court, Ward county; *Goss, J.*

Action by S. H. Sleeper against G. W. Baker and others. Judgment for defendants, and plaintiff appeals.

Reversed and remanded.

Facts: This action was brought by S. H. Sleeper, appellant, to recover damages for the breach of two contracts, one with the defendants G. W. Baker and C. E. Brace, copartners, known as "Baker & Brace," and the other with Frank D. Banta and Lincoln Banta, copartners, known as "Banta Bros.," and joining these defendants and each of them as individuals in a tort action by reason of an alleged conspiracy to break said contracts. The trial court sustained a motion to exclude all of the testimony under the complaint on the grounds that no cause or causes of action were therein set forth. This motion specifically stated wherein the several counts failed to state causes of action, but made no point as to misjoinder of actions, or as to any other defects in the pleadings. After the granting of this motion and the exclusion of the testimony, another motion was made to dismiss the action "on the ground and for the reason that the complaint failed to allege facts sufficient to constitute a cause of action." This request was also granted, and the action was dismissed, but without prejudice to the plaintiff. The error complained of, and for which a reversal is asked on this appeal, is the action of the court in granting such motions.

The first count of the complaint is in contract against the defendants Baker & Brace. It first sets up a contract between the plaintiff, S. H. Sleeper, and the defendants Banta Bros., made on the 1st day of May, 1906, wherein and whereby it was agreed that the plaintiff, Sleeper, "should furnish lands for sale to purchasers to be furnished by said defendants (Banta Bros.), and that, for each acre sold to purchasers

furnished by said Banta Bros., the plaintiff should allow them the sum of $3 per acre, and a refund of $29 railroad fare for each purchaser who actually purchased land shown by the said Sleeper, plaintiff herein, to said defendants or their customers. That in the months of August and September, 1906, the plaintiff, having listed and inquired about and arranged for the sale of a large amount of lands to customers of said Banta Bros., did show to defendants Banta Bros. large quantities of said lands so to be had for their said customers, and which this plaintiff had the right, as agent, to sell, and for which he had the right to procure customers under contract hereinafter more particularly set forth, together with other lands also shown to customers of said defendants, Banta Bros., in the months of August and September of the year 1906. That said lands were so exhibited to defendants and their customers, about fifty in number, in said months of August and September, and large quantities of land hereinafter more specifically set forth were, by reason of said showing and exhibition, sold to the customers of the defendants Banta Bros., all of the land in this complaint mentioned being so sold, and the said lands were exhibited to said customers at an expense to this plaintiff of not less than $630.50. That in the month of July, A. D. 1906, and for the purpose of carrying out the contract between the defendants Banta Bros., and the plaintiff, Sleeper, the said Sleeper made and entered into a certain contract, partly oral and partly written, with Baker & Brace, the other defendants, wherein and whereby it was agreed that the said Baker & Brace, would and did, by the terms of said contract, give authority to said plaintiff, Sleeper, to sell any of the lands which they had in their hands as agents for sale, to any person whomsoever; and that, as compensation to said Sleeper, if said sale was made, he, the said Sleeper, should receive the difference between the price given him upon the said lands as a net price by said last-named defendants, Baker & Brace, or that, in case of a sale by Baker & Brace to any customers furnished by said S. H. Sleeper or procured or introduced to said Baker & Brace by said Sleeper, they (Baker & Brace) were to pay to said Sleeper $1.50 an acre. That under the terms of said contract with Baker & Brace, the plaintiff, Sleeper, exhibited 5,080 acres of land (in said complaint particularly described) to said Banta Bros., and a number of other persons, 'all of said persons as aforesaid being furnished by said S. H. Sleeper to Baker & Brace under

the terms and provisions of the contract before set forth, and that Baker & Brace sold to said persons the said land, amounting in all to 5,080 acres of land,' and that the plaintiff, Sleeper, was entitled to receive from said Baker & Brace $1.50 per acre for such land, amounting in all to the sum of $7,620, with interest thereon from the 1st day of March, 1907, and amounting in all to the sum of $8,642.35, no part of which has been paid."

The second count is in contract against Banta Bros., and is substantially as follows: "That in the sale of said lands this plaintiff is informed and verily believes the fact to be that Banta Bros. & Co., a copartnership hereinbefore named as defendants, and Frank D. Banta and Lincoln Banta, received as commission on the sale of said lands and retained lands by way of commission in the sum of not less than $35,000. That of said commissions so received by the said Frank D. Banta, Lincoln Banta, and Banta Bros. & Co., the sum of $19,760 is justly due and owing from said Lincoln Banta, Frank D. Banta, and Banta Bros. & Co., under the terms and provisions of the contract between plaintiff and said defendants in this paragraph mentioned, no part of which has been paid, though payment thereof has been demanded, and no account for which has been rendered the plaintiff, though a demand for an accounting has been made upon the defendants in this paragraph mentioned, and each of them. That the said amount of $19,760 and interest from the 1st day of March, 1907, is justly due and owing, as this affiant is informed and verily believes, by said defendants, in this paragraph mentioned, to the plaintiff, said interest amounting, at the date hereof, to the sum of $2,651.14, making a total now justly due and owing of $22,411.14, no part of which has been paid, though payment thereof has been demanded."

The third count purports to be an action in conspiracy, and is as follows: "That in reliance upon the said contracts with the several defendants named in this action, and depending in good faith upon the same, and fulfilling the same on the part of this plaintiff in good faith, the plaintiff expended large sums of money and time for the purpose, and in showing prospective purchasers the lands alleged hereinbefore to have been sold, and in furnishing buyers to said Baker & Brace and furnishing lands to Frank D. Banta, Lincoln Banta, and Banta Bros. & Co., and did, in all things, comply with the terms of the two said contracts in this

complaint mentioned, and performed in all things the said contracts and did earn, as this plaintiff is informed and verily believes, the sums of money hereinbefore alleged to be due and owing, and the said services and sums of money so expended were of reasonable value to the defendants in this action of the sums claimed to be due and owing this plaintiff under the terms of said contracts. That heretofore, and in pursuance and performance of said contracts, this plaintiff did procure and introduce to Baker & Brace, as purchasers for lands, all persons hereinbefore named, and others, about the month of August or September, in the year 1906, and by reason of said procuring of said lands for said Banta Bros. & Co., Frank D. Banta, and Lincoln Banta, so sold and purchased as aforesaid, this plaintiff did in all matters and things comply with the terms of said contracts with all of the defendants hereinbefore named. That the said Frank D. Banta, Lincoln Banta, and Banta Bros. & Co., and G. W. Baker and C. E. Brace, disregarding the terms of said contracts hereinbefore set forth and alleged, which were then known to all of the defendants, and with the intent to cheat and defraud this plaintiff, did, in the months of August and September, A. D. 1906, and afterwards, and prior to the date hereof, falsely, fraudulently, and with the intent to cheat and defraud the plaintiff, conspire together to prevent this plaintiff from collecting any of the moneys due to this plaintiff, and hereinbefore alleged, by ignoring this plaintiff as the agent of all of said parties under the terms of said contracts, and by dealing directly with each other without the intervention or the agency of this plaintiff, and by pretended sales and various and sundry of the said lands hereinbefore described, prior to the actual and bona fide sales which were thereafter made, after said pretended sales, and by various and sundry unlawful and deceitful schemes to deceive, each and all of said defendants have conspired together for the purposes of defeating and cheating this plaintiff out of moneys alleged to be due and owing by fraud and deceit as aforesaid. That this plaintiff did not know for about the period of one year or more after the consummation of said conspiracy aforesaid that the same existed, does not know exactly how much land was sold, but believing that large amounts were sold, on which this plaintiff is entitled to commissions in addition to those hereinafter set forth and alleged. That the plaintiff was deceived by said defendants and each of them to his damage in the sums hereinbefore alleged to be due and owing, having relied

on the honesty and integrity of the said defendants and each of them, by false and fraudulent transactions and statements hereinbefore made in pursuance of and carrying out the said conspiracy in this paragraph alleged, and that said defendants and each of them did profit and have kept and retained for the use and benefit of said defendants and each of them commissions and lands received by them as commissions by reason of the agency and performance of the contract hereinbefore set forth, by plaintiff, the said sums of money hereinbefore alleged to be due and owing by defendants to plaintiff in the respective sums alleged against them and each of them, together with the other and large commissions, aggregating much more than the amounts alleged to be due, and that said defendants were entitled to keep and retain."

The prayer for relief is as follows: "Wherefore plaintiff prays judgment in his favor and against Frank D. Banta, Lincoln Banta, and Banta Bros. & Co., for the sum of $22,411.14, and against G. W. Baker, C. E. Brace, and G. W. Baker and C. E. Brace, copartners, as Baker & Brace, for the sum of $8,622.45, and against all of the defendants herein for the sum of $31,000, with interest from this date until paid at the rate of 7 per cent per annum, and that the defendants Baker & Brace be enjoined, pending this litigation, from collecting the judgment in favor of Baker & Brace and against this plaintiff; that the defendants and each of them be compelled to render a full and complete account of all of said transactions set forth in this complaint by order of this court; and that the plaintiff have such further relief as to the court seems just and meet in the premises."

*Le Sueur & Bradford* and *Reyerson & Nash,* for appellant.
*Winslow Evans* and *Bowen & Adams,* for respondents.

BRUCE, J. (after stating the facts as above). Three causes of action are intended to be set forth in the complaint. Two are separate and distinct actions upon the contract, against separate and distinct defendants, and one is an action of tort against all of the defendants.

It is for this court to determine whether such complaint is vulnerable to a motion to exclude all of the testimony for the failure of the several counts to state sufficient causes of action, and which motion, though specifically pointing out wherein such failure consists, raises no objection

to the misjoinder of the parties or of the actions, nor to the form of the pleadings.

We are of the opinion that the first count of the complaint states a cause of action in contract against the defendants Baker & Brace, and that the trial court erred in excluding all of the evidence thereunder, and in directing a dismissal of the action in so far as this count was concerned. There is, it is true, a question as to whether the joinder or attempted joinder of two causes of action upon the contract with sep-- arate and distinct defendants, and with another separate and distinct action in tort against all of the defendants, does not render the complaint defective; but, since this point was not raised by motion or demurrer preliminary to the trial in the court below, nor even by a specific objection pointing out the defect in the motion to exclude the evidence, or in the motion to dismiss on that trial, we hold that these objections, if any, were waived, and that the lower court erred in excluding *all* of the evidence under the complaint. "If there is but one righteous man in Sodom, the city may stand,"—and there appears to be at least one righteous count in this complaint. James River Nat. Bank v. Purchase, 9 N. D. 280, 83 N. W. 7.

We now come to the second count in the complaint, which also is on the contract. This count is against the defendants Banta Bros. The causes of action against Baker & Brace and against Banta Bros. are separate and distinct, and should be separately stated (see § 6877, Rev. Codes 1905), even if they can be properly joined, and there is some doubt as to whether the former portions of the complaint can be prefixed to the paragraphs just quoted and be made a part thereof, so as to constitute a cause of action. Even if they could, however, no cause of action in contract is stated against Banta Bros. The complaint, indeed, as we view it, does not allege that Banta Bros. owe Sleeper anything on the contract, but rather that Sleeper owes Banta Bros. commissions at the rate of $3 per acre. The fact, if fact it be, that Banta Bros. received thereunder $35,000 commission from other parties is, under this count, no concern of the plaintiff. No cause of action on the contract is stated in the complaint against Banta Bros.

The next count, if count it be, is a count in tort or for conspiracy, and, although on the oral argument counsel for appellant hardly mentioned the subject, it was the sufficiency of this count that furnished the

main matter in controversy, both on the trial below and in the printed briefs of counsel on this appeal.

We must remember at the outset that, although the complaint seeks to establish a conspiracy, mere opprobrious epithets do not change, in any way, the nature of the action. The action is a civil, and not a criminal, one. Indeed, as was said by Lord Holt in the case of Savile v. Roberts, 1 Ld. Raym. 374: "Though in the old books such actions are called conspiracies, yet they are nothing in fact but actions upon the case." It is generally only when men conspire to violate the primary, and not the mere contractual rights of another, that the civil action of conspiracy will lie. As one authority puts it: "An act which, if done by one alone, constitutes no ground of an action *on the case,* cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several." "The quality of the act, and the nature of the injury inflicted by it," the courts say, "must determine the question whether the action will lie." Kimball v. Harman, 34 Md. 407, 6 Am. Rep. 340; Savile v. Roberts, 1 Ld. Raym. 374.

Although there are a number of cases to the contrary, the weight of American authority seems to hold to this rule. See 1 Jaggard, Torts, p. 636; 1 Addison, Torts, p. 8. Even the cases which are often cited in contradiction to it often fail to bear out the contention of their proponents. In the case of Van Horn v. Van Horn, 52 N. J. L. 284, 10 L.R.A. 184, 20 Atl. 485, for instance, the act was done by an outsider, and was a malicious libel to character and to business; and the same is true of Lally v. Cantwell, 30 Mo. App. 524. In the case of Jones v. Stanly, 76 N. C. 355, a malicious desire to injure the plaintiff, and not the mere desire to profit one's self, is the gravamen of the action. The same is also true of the case of Delz v. Winfree, 80 Tex. 400, 26 Am. St. Rep. 755, 16 S. W. 111, and even of the leading English case of Lumley v. Gye, 2 El. & Bl. 216, 22 L. J. Q. B. N. S. 463, 17 Jur. 827, 1 Week. Rep. 432, 1 Eng. Rul. Cas. 706, on which the minority American rule seems to be grounded. In the leading American minority case of Angle v. Chicago, St. P. M. & O. R. Co. 151 U. S. 1, 38 L. ed. 55, 14 Sup. Ct. Rep. 240, upon which the respondents rely, there are to be found both a malicious motive, positive tortious acts, and positive injury which an action on a contract against the contracting party could hardly

'have reached. The cases, indeed, are generally cases where the solicita-tion was by an entire outsider, and were accompanied by fraud or intim-idation. It is also true that there is a line of cases where laborers were induced to break their contracts of employment, and which also hold to a contrary rule. See Haskins v. Royster, 70 N. C. 601, 16 Am. Rep. 780; Walker v. Cronin, 107 Mass. 555; Mapstrick v. Ramge, 9 Neb. .390, 31 Am. Rep. 415, 2 N. W. 739. These cases, however, belong to .a class of their own, and they are historically grounded in the deep-rooted policy of the old English, and even early colonial American law, which almost gave to the employer a property right in his employee, which was evidenced by statutes of laborers, of Elizabeth, and of Ed-ward VI., and which tied the laborer to the land and dictated and con-trolled his contracts of employment. See 1 Addison, Torts, p. 7; Cham-bers v. Baldwin, 91 Ky. 121, 11 L.R.A. 545, 34 Am. St. Rep. 165, 15 ,S. W. 57, 58; 1 Jaggard, Torts, p. 636.

The rule, indeed, has, except where direct fraud or coercion has been used, or where no adequate action upon the contract would lie against the guilty parties, rarely been extended to the breach of contracts gen-erally. The whole question is so thoroughly and adequately discussed n the case of Chambers v. Baldwin, supra, and under a very similar state of facts, that we will refrain from lengthening this opinion; and, with-out necessarily affirming all that is in that opinion contained, we will refer to it for a discussion of the law. The rule, as we see it, is substan-tially this: That "an action cannot in general be maintained for induc-ing a third person to break his contract with the plaintiff; the conse-quence after all being only a broken contract for which the party to the contract may have his remedy by suing upon it." Ashley v. Dixon, 48 N. Y. 430, 8 Am. Rep. 559; Brentman v. Note (City Ct. N. Y.) 24 N. Y. S. R. 281, 3 N. Y. Supp. 420; Boyson v. Thorn, 98 Cal. 578, 21 L.R.A. 233, 33 Pac. 492; Kimball v. Harman, 34 Md. 407, 6 Am. Rep. 340.

It is true that the Wisconsin case of Martens v. Reilly, 109 Wis. 464, 84 N. W. 840, seems to support the position of the appellant; but this case is not only contrary to the weight of American authority (see Jaggard, Torts, p. 696), but, as we will hereafter see, was decided under a peculiar local statute. The same is true of the cases of White v. White,

132 Wis. 121, 111 N. W. 1117, and Randall v. Lonstorf, 126 Wis. 147, 3 L.R.A.(N.S.) 470, 105 N. W. 663, 5 Ann. Cas. 371. In the latter case, also, something greater than a breach of contract was involved, namely, a breach and annulment of the marriage relationship, in which the state as well as the individual is concerned. Anyway, all of the Wisconsin cases are decided under a statute in regard to conspiracy which is radically different from our own. To use the language of the admirable note to the case of Randall v. Lonstorf, supra, which is to be found in 5 Ann. Cas. 375: "The reported case cannot be said to conflict with the rule which is generally recognized. The case turned on the construction of the Wisconsin statute defining conspiracy, and it was merely held that the allegations of the complaint brought the case within that portion of the statute which makes it unlawful for any two or more persons to combine or agree together 'for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.'" The court held, in the Wisconsin case, that the conspiracies or agreements were for the purpose of "preventing a lawful act," i. e., the fulfilment of the contracts. Our statutes (§ 8768, Rev. Codes 1905) only makes the prevention of the doing of a lawful act unlawful when that prevention is brought about "by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use of employment thereof."

We hold, therefore, that the trial court did not err in excluding all the evidence as to the alleged conspiracy, and if this were the only count we would affirm the judgment. We are, however, as we have before said, equally satisfied that an action, in contract is sufficiently pleaded in the complaint as against the defendants Baker & Brace, in so far, at least, as to render it invulnerable to a motion on the trial to exclude all of the testimony, and to a motion to dismiss the action after such testimony was excluded, which merely specify basic faults in substance, and do not call attention to misjoinder or lack of form.

The judgment of the trial court is reversed, and the case is remanded for a new trial. The costs will be taxed against the respondents.

Goss, J., being disqualified, did not participate. Honorable CHARLES A. POLLOCK, Judge of the Third Judicial District, sat in his place.