**VOSS v. BECKO.**

No. 14378.

United States Court of Appeals
Eighth Circuit.

Dec. 11, 1951.

Norman G. Tenneson and Herbert G. Nilles, Fargo, N. D., for appellant.

P. W. Lanier, Sr., Fargo, N. D., for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal by defendant from a judgment for the plaintiff entered on a verdict of a jury for $5,000 actual damages and $2,500 exemplary damages. Plaintiff and defendant are photographers. Plaintiff, a citizen of Minnesota, operates studios at Winona and Rochester, Minnesota, Fond du Lac, Wisconsin, and Fargo, North Dakota. Defendant, a citizen of North Dakota, is engaged in business in Fargo, North Dakota.

In the spring of 1949 plaintiff organized and conducted in the trade territory of each of his studios a contest which he called the "Charming Child Contest." The contest was to begin on May 2, 1949, and continue through 'July 30, 1949. During this period parents of children were solicited by newspaper advertising and radio broadcasts to have photographs of their children taken at one of plaintiff's studios. In addition to the award of prizes at the end of the contest to the contestants whose photographs were adjudged the most charming, the plan provided for weekly winners in each town in which the plaintiff operated, six of whom were to receive merchandise certificates of the value of $4 redeemable by one of twelve merchants in each of the towns.

In his complaint plaintiff alleged that pursuant to the plan of the contest he entered into contracts with twelve merchants in Fargo, North Dakota, the merchants agreeing to honor the merchandise certificates issued to the weekly winners in Fargo. In return the plaintiff agreed that his newspaper advertising in Fargo would carry the names of the merchants participating in the contest, and that their names would be mentioned in his radio broadcasts. Plaintiff's newspaper advertising was to appear at least once a week in the Fargo newspaper during the period of the contest. The expense of all publicity was to be paid by the plaintiff.

Plaintiff alleged that after the appearance of the first weekly advertisement in the Fargo paper, in which the names of the twelve participating merchants appeared, the defendant called on the merchants and induced them to refuse to permit the plaintiff to continue the use of their names in his advertising by falsely and fraudulently representing to the merchants that plaintiff was an unethical and untrust-

worthy operator, and by threatening the merchants with the loss of business if they permitted their names to again appear in association with that of the plaintiff who was represented to be a "fly-by-night operator not to be relied on"; that defendant's representations to the merchants were knowingly false and willfully made with the intention to injure the plaintiff in his business and to destroy competition in the photographing business in Fargo. The complaint concluded with a prayer for compensatory and punitive damages.

Defendant's answer, in addition to a general denial of the allegations of the complaint, set up by way of affirmative defenses that the contracts between the plaintiff and the merchants were illegal and unenforceable in that the published advertisements of the contest were violative of the Unfair Trade Practices Act of the State of North Dakota, R.C.N.D.1943, 51–1001 et seq., prohibiting false and misleading advertising, and also of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., declaring unlawful unfair methods of competition and unfair and deceptive acts or practices in interstate commerce.

In the trial court and in this court the parties with apparent agreement have treated the complaint of plaintiff as stating only a claim against the defendant for damages for wrongfully inducing the merchants in Fargo to break their contracts with plaintiff to participate in the promotion of his "Charming Child" contest. Plaintiff's contracts with the Fargo merchants were oral. Under the evidence the respective obligations and rights of the parties under the contracts are to say the least matters of considerable doubt. But in the trial court both plaintiff and defendant, again in apparent agreement, proceeded upon the theory that the contracts obligated the merchants to permit the use of their names in the plaintiff's advertising of the contest. On this interpretation of the contracts the defendant's position was that the contracts were void and unenforceable because the advertising in which the names of the merchants were to appear was in violation of sections 51–1003 and 51–1201 of the North Dakota Revised Code, 1943, which prohibit false and misleading advertising, and make a violation of the sections a misdemeanor, and also contrary to the provisions of the Federal Trade Commission Act as constituting unfair and deceptive practices in interstate commerce. On the other hand, plaintiff's contention was that the right acquired under the contracts to use the names of the local merchants in Fargo advertising was a valuable right under his contracts as constituting in the public mind an endorsement of the contest by reputable business concerns in Fargo; that the refusal of the merchants to permit the use of their names in the advertising caused the contest to fail in Fargo with a loss of profits and damage to the good will of his business. The case went to the jury and comes to this court upon the interpretation the parties placed upon the pleadings and the issues presented by them.

The evidence establishes without dispute that as a result of the representations made by defendant to the Fargo merchants after the appearance of the first advertisement of the contest in the Fargo newspaper, the merchants refused to permit their names to appear in further advertising, although they continued to redeem throughout the contest the merchandise certificates issued to the contest winners by the plaintiff. The questions submitted to the jury were: (1) the validity of plaintiff's contracts with the Fargo merchants; (2) whether the defendant by fraud or coercion induced the merchants to break their contracts with the plaintiff; (3) whether loss to plaintiff was proximately caused by the alleged breach of the contracts; and (4) whether the conduct of defendant was such as to justify the jury in awarding plaintiff exemplary damages.

■■ The criticised advertisement published by plaintiff in the Fargo newspaper was introduced in evidence. It could have been more explicitly stated, but it was not so patently misleading as to compel a ruling by the court that as a matter of law it was published with fraudulent intent within the meaning of the North Dakota statute or that it constituted an unfair and deceptive practice within the meaning of either the North Dakota statute or the Federal

Trade Commission Act. We think the question was one for the jury which on sufficient evidence the jury has decided against the defendant. There was also evidence on behalf of the plaintiff from which the jury could find that the defendant made the representations to the Fargo merchants as charged in the complaint, and that the representations were false and willfully made by defendant with intent to deceive the merchants and to damage the plaintiff. These representations did not consist merely of criticisms of plaintiff's advertising. They were directed also to plaintiff's professional ability as a photographer and as to his personal and professional integrity. Defendant's denial that the alleged representations were made presented an issue which the jury has found against him.

■■ The difficulty with plaintiff's case, however, is that he wholly failed to prove that he suffered more than nominal damages for the breach of his contracts. There was no evidence of loss of good will. Over the objection of defendant the court permitted plaintiff to prove that his gross receipts in Fargo during the three months of the contest were less than in the same period of the preceding year, whereas in the other cities in which the contest proceeded with the merchants participating according to contract the gross receipts were larger than for the same period in the preceding year. This was all the evidence offered by plaintiff to show that he sustained any loss as a result of the actions of the defendant. The evidence is clearly inadmissible. Proof of gross receipts is not evidence either of profits or the absence of profits, nor of the failure or success of the contest in Fargo. The evidence should have been excluded.

■ Over defendant's objection the court submitted to the jury the question whether the defendant coerced the merchants to breach their contracts with plaintiff, while at the same time instructing the jury that there was no evidence to justify a finding that the merchants were forced by the defendant to breach their contracts. These instructions were conflicting and therefore erroneous.

■ North Dakota is one of a minority of States holding that an action in tort for wrongfully inducing a breach of contract may only be maintained on proof that the breach of contract complained of was induced by direct fraud or coercion on the part of the defendant. The leading North Dakota case in point is Sleeper v. Baker, 22 N.D. 386, 134 N.W. 716, 39 L.R.A.,N.S., 864, followed in Wedwik v. Russell-Miller, 64 N.D. 690, 256 N.W. 107. There are no other North Dakota cases on the question.

■ The rule as stated in the Sleeper case is that an action in tort for damages for wrongfully inducing the breach of a contract will not lie against the parties charged "except where direct fraud or coercion has been used". 134 N.W. at p. 719. The word "force" does not appear in the opinion. The North Dakota court refers to the Kentucky case of Chambers v. Baldwin, 91 Ky. 121, 15 S.W. 57, 59, 11 L.R.A. 545, for a statement of the applicable rule of law. The opinion in the Kentucky case discusses at length the origin and history of an action in tort for wrongfully inducing the breach of a contract. The Kentucky court approved as correct the rule as stated in Cooley on Torts that " 'An action cannot, in general, be maintained for inducing a third person to break his contract with the plaintiff; the consequence, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it.' " The court concluded that an exception arises to the rule "where a person has been procured against his will, or contrary to his purpose, by coercion or deception of another to break his contract." Discussing the facts in the case before it the court said: "But as Wise was not induced by either force or fraud to break the contract in question, it must be regarded as having been done of his own will, and for his own benefit. And his voluntary and distinct act, not that of appellee, being the proximate cause of damage to appellants, they according to a familiar and reasonable principle of law, cannot seek redress elsewhere than from him." The words "force" and "coercion" as used by the Kentucky court are synonymous, either word meaning the exercise of such influence as compels a party against his will to breach his contract with

another. There is no evidence in the present case to support a finding of the jury that the merchants were compelled against their will to abandon the contracts.

 For the breach of plaintiff's contracts insofar as it was shown to have been procured by the fraud of the defendant the plaintiff was entitled to recover such compensatory damages as the evidence showed to have been the natural and proximate consequences of the breach. Since the evidence failed to establish actual damages, no punitive damages were recoverable, and only nominal damages could have been allowed.

The judgment of the District Court is reversed, and the case is remanded for a new trial in conformity with this opinion.