Field and others vs. Siegel and another.

Field and others, Respondents, vs. Siegel and another, imp., Appellants.

*May 4—May 24, 1898.*

*Action for conspiracy to defraud creditor.*

A general creditor of one who, when perfectly solvent, without fraud, purchased goods of him on sixty days credit, cannot maintain an action on the case against such debtor, and against other defendants with whom he subsequently conspired by confessing judgment on fictitious notes to place all his property beyond the reach of such creditor, to recover damages therefor.

APPEAL from an order of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

The facts of the case appear in the opinion.

For the appellants the cause was submitted on the brief of *Hughes, Whitford & Gosnell.*

For the respondents there was a brief by *W. M. Steele* and *A. T. Rock,* and oral argument by *W. M. Steele.* They contended, *inter alia,* that the action could be maintained against the debtor and all who conspired with him to defraud the plaintiffs. *Place v. Minster,* 65 N. Y. 89, and cases cited; *Work Bros. & Co. v. McCoy,* 87 Iowa, 217; *Tucker v. Finch,* 66 Wis. 17; *Page v. Parker,* 43 N. H. 363. The purchase of the goods having been made with intent to defraud the plaintiffs, the purchaser had only a voidable title, and the plaintiffs had an interest in the goods. *Adams v. Paige,* 7 Pick. 542; *Findlay v. McAllister,* 113 U. S. 104. Even if the purchase was not fraudulent, the unlawful acts of defendants, done in a conspiracy, constitute a cause of action. *Penrod v. Morrison,* 2 Pa. (P. & W.), 126; *Mott v. Danforth,* 31 Am. Dec. 468; *Hurwitz v. Hurwitz,* 30 N. Y. Supp. 208, 9 Misc. 201; *Meredith v. Johns,* 1 Hen. & M. 585; *Smith v. Tonstall,* Carthew, 3, 4; *Kelsey v. Murphy,* 26 Pa. St. 78.

CASSODAY, C. J.   This is an appeal from an order overruling a demurrer to the complaint, which is very lengthy, and alleges numerous facts with unnecessary detail, but is to the effect that between September 2, 1895, and November 20, 1895, the plaintiffs, as copartners and wholesale merchants at Chicago, sold and delivered to the defendants Cohen & Siegel, as partners, and at their request, goods, wares, and merchandise of the value of $1,155.98, on a credit of sixty days from the date of each invoice, for which they promised and agreed to pay to the plaintiffs the amount of each invoice as the same matured, amounting in all to the sum stated; that no part thereof has been paid, except $18 November 15, 1895; that the balance of $1,137.98 was still due and unpaid; that Cohen & Siegel during the summer and fall of 1895 in like manner purchased goods, wares, and merchandise of divers other wholesale and jobbing merchants in Chicago and elsewhere on credit, and became and were indebted therefor in December, 1895; that between August 1, 1895, and December 29, 1895, and while Cohen & Siegel were possessed of a stock of merchandise of the value of about $30,000, they, together with the other defendants, did wrongfully, maliciously, unlawfully, and fraudulently conspire, connive, and contrive together to defraud the creditors of Cohen & Siegel, including the plaintiffs, out of their just demands against Cohen & Siegel; that in pursuance of such conspiracy to defraud their creditors, and as a means to effect such fraud, Cohen & Siegel, conspiring with the other defendants, made and delivered a large number of notes to the other defendants, respectively, or firms, dated at different times, and payable at different dates, and at different rates of interest, in the aggregate of nearly $10,000, and upon which notes judgments were fraudulently taken by confession, and by the several defendants acting in concert, December 30 and 31, 1895, and which judgments so fraudulently confessed and entered, with accumulated costs,

amounted in the aggregate to the sum of $10,145.84; that immediately upon the rendition and entry of such judgments the defendants caused executions to be issued thereon, in due form of law, directed and delivered to the sheriff, and directed and instructed him to levy the same upon all the personal property and assets of Cohen & Siegel, and to take the same into his possession, and to sell the same to satisfy said executions; that in pursuance of such instructions the sheriff on December 30, 1895, levied upon, seized, and took into his possession all the property of Cohen & Siegel, consisting of their stock of merchandise, and, after duly advertising the same for sale under said executions, sold the same at public auction February 11, 1896, to the defendant Isaac Rothstein, for an amount insufficient to satisfy the amounts claimed to be due on said executions.

The complaint further alleges that at the time said stock of goods and merchandise was so levied upon and seized by the sheriff under said several executions, the same was well and reasonably worth, and of the reasonable value of, $25,000; that the same was all the property and assets the defendants Cohen & Siegel, or either of them, then owned, not exempt, and that they have not now, nor has either of them, any tangible assets or property out of which the plaintiffs can make satisfaction of their said claim against them, above specified; that Cohen & Siegel were not at any of said times indebted to any or either of said other defendants in any sum or sums whatever, but that all of said notes, complaints, answers, confessions of judgments, and judgments were and are false and fictitious, and that all of the acts of said defendants done in the premises (the purchasing from the plaintiffs of the several invoices of goods mentioned, and contracting the indebtedness due to the plaintiffs from Cohen & Siegel aforesaid; the making of the notes, complaints, answers, and confessions of judgments; the issuing of executions thereon; the sale of the goods and chattels of Cohen &

Siegel thereunder; and the purchase thereof by Rothstein) were all so made, done, or caused to be done, as part of one common plan, design, and conspiracy on the part of, and participated in by, all of the defendants, to effectuate and accomplish by means thereof a fraudulent conveyance and transfer of all the property and assets of Cohen & Siegel to the defendant Rothstein, with the intent and for the purpose to place the same beyond the reach of their *bona fide* creditors, and with the intent and purpose to cheat and defraud the plaintiffs and other creditors out of their just demands against Cohen & Siegel, and prevent the plaintiffs from resorting to the property and assets to enforce payment of their said claim; that, prior to the sale of the goods and chattels aforesaid under the executions aforesaid, Cohen & Siegel had and possessed ample property and means to have paid all their *bona fide* indebtedness in full, and at all of said times were financially responsible and solvent.

The complaint prayed judgment against the defendants, and each of them, for $1,137.98, with interest from January 20, 1896, and costs and disbursements of this action.

The demurrer admits to be true the several allegations of fact contained in the complaint. If they are true, they are certainly disreputable to the several defendants, and such as to entitle the plaintiffs to a remedy in an appropriate proceeding against them. The only question we are here called upon to determine is whether, upon the facts alleged, they are entitled to recover in this action. The complaint is replete with allegations of fraud, conspiracy, and concert of action by and between, and on the part of, the defendants; but none of them relates to any overt act in contracting the debt or procuring the goods. Nevertheless, the complaint alleges, in effect, that during the time between August 1, 1895, and December 29, 1895, Cohen & Siegel, as copartners, were possessed of a stock of merchandise of the value of about $30,000; that when their stock of goods was levied

upon and seized upon such executions, December 30, 1895, the same was of the value of $25,000; that prior to the sale of such goods and chattels under the executions aforesaid, February 11, 1896, Cohen & Siegel "had and possessed ample property and means to have paid all their *bona fide* indebtedness in full, and at all said times were financially responsible and solvent." Their indebtedness to the plaintiffs was contracted between September 2, 1895, and November 20, 1895; and so it appears that Cohen & Siegel were perfectly solvent for more than a month prior to the time when any portion of the plaintiffs' debt was contracted, and remained perfectly solvent for nearly three months after the last item of that indebtedness was contracted. It is not, therefore, the case of an insolvent debtor purchasing goods on credit,— much less, an insolvent debtor, knowing himself to be insolvent, so purchasing goods with the preconceived purpose of not paying for them. *Lee v. Simmons*, 65 Wis. 526.

There is no allegation that the plaintiffs were induced to sell or part with the goods, or any of them, to Cohen & Siegel, on credit, by reason of any fraud, false statement, representation, or pretense whatever. Even when a vendor parts with his goods upon false representations, yet it is well settled that such representations are not actionable unless they were not only relied upon by the vendor, but related to some present or past state of facts; that the mere failure to perform a promise, or to make good subsequent conditions which had been assured, is insufficient to maintain an action for deceit. *Morrison v. Koch*, 32 Wis. 254; *Patterson v. Wright*, 64 Wis. 289; *Sheldon v. Davidson*, 85 Wis. 141; *Warner v. Benjamin*, 89 Wis. 296; *Louis F. Fromer & Co. v. Stanley*, 95 Wis. 56. Whatever may have been the secret and ultimate purpose of the defendants, or any of them, yet the first action alleged to have taken place in regard to the transfer of Cohen & Siegel's stock of goods in fraud of the plaintiffs and their other creditors was on December 30,

Field and others vs. Siegel and another.

1895, when the judgments were fraudulently confessed and the property seized on executions. That was forty-one days after the last sale of goods from the plaintiffs to Cohen & Siegel. It is the case, therefore, of a firm of merchants, perfectly solvent, purchasing goods on short credit, without any fraud or false statement, representation, or pretense, and then, subsequently, and after the purchase, conspiring with the other defendants to dispose of their property in the manner indicated, with the intent on the part of all such conspirators to defraud the plaintiffs and other creditors of such solvent firm.

The question recurs whether an action on the case can be maintained for such an alleged conspiracy. The adjudications are not all in harmony. The Massachusetts cases are to the effect that no such action can be maintained. Thus, it was held many years ago that "an action on the case for the fraud of the defendant in purchasing personal property of the plaintiff's debtor, and aiding the debtor to abscond in order to prevent the plaintiff from enforcing payment of his debt by attaching the property or arresting the body of the debtor, cannot be sustained; but the proper remedy is either to attach specifically the property fraudulently transferred, or to attach it in the defendant's hands, by the trustee process." *Lamb v. Stone*, 11 Pick. 527. To the same effect, *Wellington v. Small*, 3 Cush. 145; *Bradley v. Fuller*, 118 Mass. 239; *Dudley v. Briggs*, 141 Mass. 582; *Dawe v. Morris*, 149 Mass. 188. See, also, *Greene v. Kimble*, 6 Blackf. 552; *Moody v. Burton*, 27 Me. 427–435. In this last case, as well as some of the others cited, the learned judge writing the opinion clearly shows that "the loss or injury would be too uncertain and remote for legal estimation."

So, it was held in Connecticut that: "An action for fraudulent acts, intended to induce, and by which a creditor was induced, not to secure a debt by legal process, by which means he lost the debt, will not lie at common law; and

Field and others vs. Siegel and another.

it makes no difference if a conspiracy for the purpose is charged. The damages are too remote. They must be a clear and necessary consequence of the fraudulent act, and of a character to be clearly defined and ascertained." That was an action of trespass on the case at common law, and was brought against a debtor and two other defendants, charging a conspiracy to defraud the plaintiff of his debt, and alleging that the defendants fraudulently removed the debtor's goods to prevent their being taken by legal process; but it was held that the plaintiff could not recover. *Austin v. Barrows*, 41 Conn. 287. So, it has been held in Rhode Island that: "A., being a creditor of B., brought trespass on the case against C. and others, charging them with conspiring to prevent A. from obtaining payment out of the estate of B., and with receiving from B. fictitious mortgages, by means of which they took B.'s personalty, and secreted it, so that A. could not attach it, and thus lost his claim. It appearing that A. had no lien on B.'s estate by attachment, levy, or otherwise, and was only a creditor at large of B., *held*, that the action could not be maintained." *Klous v. Hennessey*, 13 R. I. 332. So, it has been held in Maryland that: "In an action on the case against several, founded on an alleged conspiracy to injure the plaintiffs, they are not entitled to recover, even if there were such unlawful conspiracy among the defendants, unless the plaintiffs can show that they have in fact been aggrieved, or have sustained actual legal damage, by some overt act done in pursuance and execution of the conspiracy. No action lies for simply conspiring to do an unlawful act. It is the doing the act itself, and the resulting actual damage to the plaintiff, which furnish the ground of the action. An act which, if done by one alone, constitutes no ground of an action on the case, cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several. The quality of the act, and the nature of the injury

inflicted by it, must determine the question whether the action will lie." *Kimball v. Harman*, 34 Md. 407. So, it has been held in Vermont that: " An action on the case for the fraud of the defendant in combining with plaintiff's debtor in attaching all the personal property of the debtor, for the benefit of the debtor, and concealing the same, in order to prevent the plaintiff from enforcing the payment of his debt, cannot be sustained; but the proper remedy is either to attach the property fraudulently held, or charge the defendant as trustee, or seek aid in a court of equity, or pursue the defendant personally, under the statute, for being a party to a fraudulent judgment or fraudulent sale. Nor can an action on the case, where the gist of the action is the fraudulent combination and conspiracy of the defendant with the plaintiff's debtor to secrete the property, and prevent the plaintiff from obtaining payment and security for his debt, be sustained." *Hall v. Eaton*, 25 Vt. 458.

In some of the cases relied upon by counsel for the plaintiffs in support of this action, the fraud and conspiracy were practiced directly upon the plaintiff, and operated to destroy or impair his rights of property. *Page v. Parker*, 43 N. H. 363; *Findlay v. McAllister*, 113 U. S. 104; *Place v. Minster*, 65 N. Y. 89. This is not such a case. It has been held in New York that where the fraud or conspiracy is not actual and positive, but merely constructive, and where it did not concur in direct injury to the plaintiff, the action could not be maintained. *Ross v. Wood*, 70 N. Y. 8; *Braem v. Merchants' Nat. Bank*, 127 N. Y. 508. The rule is elementary that an action on the case in favor of a general creditor will not lie against the fraudulent vendee or grantee of his debtor. Bump, Fraud. Conv. (4th ed.), § 528. In 6 Am. & Eng. Ency. of Law (2d ed.), 878, 879, it is said, as the better reason, in effect, that a general creditor has no such present or vested interest in the goods of his debtor as will render liable to such creditor, in an action on the

Hunter and another vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

case for damages, those who enter into a conspiracy to remove or conceal such property so that it cannot be reached by legal process; and this is put upon the ground that such a loss and injury are too uncertain and remote for legal consideration.   This view meets with our judgment.

It follows that the complaint does not state a cause of action.

*By the Court.*— The order of the superior court of Douglas county is reversed, and the cause is remanded with direction to sustain the demurrer, and for further proceedings according to law.