Schwenn, Respondent, vs. Schwenn and others, Appellants.

*December 4, 1917—January 5, 1918.*

*Conspiracy to defeat antenuptial contract: Fraudulent transfer of property: Cause of action: Parties: Executors and administrators.*

1. A complaint charging that defendants and plaintiff's divorced husband conspired together to produce a breach of his antenuptial contract with plaintiff by fraudulently disposing of all his property, and that they consummated such conspiracy so that prior to his death all his property had been acquired by defendants fraudulently and without consideration, and at his death nothing was left with which to pay the amount which then became due to plaintiff on said contract, is *held* to state a cause of action for damages. *Field v. Siegel,* 99 Wis. 605, distinguished.

2. A demurrer to such complaint on the ground of a defect of parties plaintiff, in that plaintiff was not the executor or administrator of the estate, was properly overruled.

Appeal from an order of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

The complaint in this action sets forth substantially the following facts: That the plaintiff and Fritz Schwenn intermarried September 30, 1902; that prior to the marriage a written antenuptial contract of marriage settlement was made between the parties, a copy of which contract is attached to the complaint; that on October 18, 1909, in an action by the plaintiff against said Fritz Schwenn judgment of absolute divorce was entered in favor of plaintiff; that in said judgment it was determined that Fritz Schwenn was the owner of notes, mortgages, and securities of the value of $10,000; that an appeal was taken to the supreme court from said judgment, and that upon said appeal the judgment was modified by awarding plaintiff $1,000 as division of property and further providing that such judgment should not operate to bar or in any way disturb plaintiff's rights to the sum of $500 or any sum which plaintiff might be entitled to under

the terms of the antenuptial contract between the parties; that the antenuptial contract provided for the payment of $500 in case plaintiff survived said Fritz Schwenn; that the amount due under the antenuptial contract has not been paid, or any part thereof; that for the purpose of cheating and defrauding plaintiff and hindering, delaying, and preventing her from recovering the amount so due her, or any part thereof, the defendants and said Fritz Schwenn entered into a conspiracy to fraudulently transfer, dispose of, or cancel the notes, mortgages, and securities so held by said Fritz Schwenn, the same constituting all the property of which he was the owner or possessed, and that he was possessed of no other means of any kind out of which the claim of plaintiff or other creditors can be satisfied or collected; that a portion of said mortgages and notes were personal obligations of some of the defendants herein; that in accordance with the purpose of said conspiracy the defendants and Fritz Schwenn fraudulently and without consideration caused said notes and mortgages so held against some of the defendants to be satisfied or surrendered and defendants collected and retained the proceeds of other notes, mortgages, or securities held by him, such proceeds being turned over to and accepted by them for the fraudulent purpose aforesaid, with the intent on the part of said Fritz Schwenn to escape the payment to plaintiff of the amount due upon said antenuptial contract; that defendants were fully cognizant of the intent and purpose of Fritz Schwenn and shared and participated therein; that as a result of said fraudulent acts of defendants and Fritz Schwenn all property of which he was the owner and of which he was possessed was, prior to his death, disposed of to and acquired by the defendants; that Fritz Schwenn left no property out of which plaintiff's claims under said antenuptial contract can be paid or satisfied in whole or in part, or out of which the claims of other creditors of said Fritz Schwenn can be satisfied, and other creditors have been and

will thereby be prevented from recovering of the estate of said Fritz Schwenn any portion of their claims or demands against said Fritz Schwenn; that the property so unlawfully acquired by and turned over to defendants herein for the fraudulent purposes aforesaid is more than sufficient to satisfy the claims in favor of plaintiff or other creditors of Fritz Schwenn; that through the consummation of said conspiracy the plaintiff has been deprived of any remedy against the estate of Fritz Schwenn under the contract before referred to and has been thereby damaged in the sum of $500 with interest as provided by law from the date of the death of Fritz Schwenn; that Fritz Schwenn died in May, 1912, at Minneapolis, Minnesota. Judgment is demanded against the defendants for the sum of $500 with interest and costs.

The defendants demurred to the complaint, first, on the ground that there was a defect of parties plaintiff, in that the complaint shows the plaintiff is not the administrator or executor of the estate of Fritz Schwenn; and second, on the ground that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and from an order overruling it this appeal was taken.

*F. K. Shuttleworth* of Madison, for the appellants.

For the respondent the cause was submitted on the brief of *Grady & Farnsworth* of Portage.

KERWIN, J. We have set forth the substance of the complaint in the statement of facts. It clearly states that the defendants combined and conspired to produce a breach of the contract obligations of Fritz Schwenn to the plaintiff and prevent her from receiving the benefits provided for her in the contract, and that they succeeded in producing a breach of the contract, to the injury of plaintiff in the sum of $500. The facts set forth in the complaint include all the elements which have been held in several decisions of this court to be essential in an action for damages for an executed conspiracy

to injure.  *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467; *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663; *White v. White,* 132 Wis. 121, 111 N. W. 1116; *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73; and other cases in this court.

In the instant case upon the allegations of the complaint there was a combination of two or more persons to do an unlawful act, to wit, to produce a breach of a contract obligation, accomplishment of that purpose, and resulting damage to the person designed to be injured.

In *White v. White, supra,* the rule applicable to such a situation is thus in effect stated: Any combination of two or more persons to do an unlawful act, such as to breach a contract, by any means which is carried out is an actionable conspiracy for which those participating must respond in damages to the person injured.

Counsel for appellants relies upon *Field v. Siegel,* 99 Wis. 605, 75 N. W. 397, where it is held that a general creditor cannot maintain an action against his debtor and others with whom he conspired to place all his property beyond the reach of his creditors, to recover damages.  Much that is said in the opinion does not seem to apply to that case and certainly does not apply to the instant case.  In *Field v. Siegel* the conspiracy entered into was to defraud creditors generally, while in the case at bar the action is against the defendants who entered into a conspiracy for the express purpose of breaching the contract between Fritz Schwenn and plaintiff and preventing her from recovering the fruits thereof, and which did in fact accomplish that purpose. In *Field v. Siegel* it is suggested that it is essential to the recovery of damages for a consummated conspiracy to injure that the damages "must be a clear and necessary consequence of the fraudulent act and of a character to be clearly defined and ascertained."  There can be no question but that such elements are clearly alleged in the case

at bar.   It is also said in the *Field-Siegel Case,* "No ac-
tion lies for simply conspiring to do an unlawful act.   It
is the doing the act itself, and the resulting actual damage to
the plaintiff, which furnish the ground of the action."   This
statement is good law, but the precise situation so stated to
be essential to such an action as this is clearly alleged in the
complaint in the instant case and seems to have been in the
case with which the court was dealing.

Again the court said in *Field v. Siegel,* "An act which, if
done by one alone, constitutes no ground of an action on the
case, cannot be made the ground of such action by alleging
it to have been done by and through a conspiracy of several."
That was expressly said not to be the law of this state in
*State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W.
1046.   It will be seen that the *Field Case* as treated by the
court is quite different from the instant case, as appears from
the reasoning of the court in that case.

The holding here is that where, as in the present case, there
is charged a conspiracy to defeat or breach one specific con-
tract, or certain specific contracts, by the fraudulent trans-
fer of the debtor's property, an action for damages lies
against the conspirators.   Whether such an action would lie
where the conspiracy is to defraud creditors generally, as in
*Field v. Siegel, supra,* is not decided.

As regards the first ground of demurrer it is only neces-
sary to say that it is wholly without merit.   The action was
not brought against Fritz Schwenn or his estate, but against
the defendants who conspired with him and obtained his
property.   Further discussion seems unnecessary.

Our conclusion is that the complaint must be sustained,
upon the authority of many cases decided by this court since
*Field v. Siegel, supra.*

The order of the court below must therefore be affirmed,
and anything said in *Field v. Siegel, supra,* in conflict with
this opinion must be deemed overruled.

*By the Court.*—The order appealed from is affirmed.

The following opinion was filed January 22, 1918:

WINSLOW, C. J. (*concurring in the result*). With considerable doubt I have concurred in the conclusion that the complaint states a good cause of action, but I wish to make it plain that my concurrence goes no further than the facts of the present case require, and I also wish to briefly state why this is so.

The present case, as set forth in the complaint, is a case where a husband (now deceased) entered into a conspiracy with his children and heirs at law to prevent the payment to his divorced wife of the sum secured to be paid to her after his death by antenuptial contract with her; and carried out the conspiracy by transferring to them before his death all of his property, amounting to $10,000, leaving no estate out of which the money agreed to be paid by the antenuptial contract (viz. the sum of $500) could be collected.

The antenuptial contract contained a number of other provisions with regard to the residence of the parties upon the wife's farm, the disposal of the income of the farm, the duties of each in case of sickness of the other, the duty of the husband as to repairs, insurance, and payment of taxes on the farm, etc., which will be found more fully stated in the statement of facts in the divorce action (*Schwenn v. Schwenn,* 143 Wis. 399, 127 N. W. 948).

Here was, not a mere money obligation, but a contract providing for the doing of numerous things by each party, all arising out of, or closely connected with, the marital relation. The existence and validity of this contract had been admitted and practically adjudicated in a previous action between the parties (*Schwenn v. Schwenn, supra*). The defendants are alleged to have successfully conspired with the divorced husband to put all of his property out of his hands so that there was no estate at his death, for the very purpose of defeating the fundamental agreement on the part of the husband on which the whole fabric of the antenuptial agree-

ment rested, namely, the agreement that the wife should be paid a definite sum from the husband's estate in case she survived him.

The cases in this court upon which the argument in support of the complaint really rests are the cases of *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663; *White v. White,* 132 Wis. 121, 111 N. W. 1116; and *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73.

There is no question but that this court distinctly held in the *Martens Case* that if two or more persons successfully conspire to produce the breaking of a contract the injured party may recover his damages in an action at law against the conspirators. The contract breached in that case was a contract for the leasing of lands for a term of years, with a privilege of purchase and a number of other provisions as to the use of the premises, etc. In the *Lonstorf Case* the object of the conspiracy was "the breaching of the marriage contract and the desertion of the wife by the husband, leaving her in destitution." In the *White Case* also it was a marriage contract which was breached as the result of a successful conspiracy, and in the *McLennan Case* it was a contract for the conveyance of land. The contract breached in the case of *Angle v. C., St. P., M. & O. R. Co.* 151 U. S. 1, 14 Supt. Ct. 240, where a similar ruling was made, was a contract for the construction of sixty-five miles of railroad which had been partially performed. So it appears that all of the cases which seem to be relied upon to sustain the reasoning of the court in the present case were cases where the contracts breached were contracts of a continuing nature, or contracts only partially carried out, covering numerous transactions, with duties and obligations on both sides.

On the ground that the contract in the present case was of this nature and not a mere debt, I have, with some doubt, concurred in the result. I go no further, however. When

the abstract question is squarely presented whether a transfer of a debtor's property to third persons with intent to simply avoid payment of one debt or a number of debts (the transferees participating in the intent) is an actionable conspiracy within the rule of the *Martens Case,* I shall feel entitled to examine it unembarrassed by anything decided in the present case. In my judgment that question is not here presented.

There are, as it seems to me, a number of important considerations which will then demand careful attention which have not been presented or even suggested in the present case. I desire to mention briefly and without argument some of the considerations which I have in mind.

In the first place a transfer of property by a debtor does not *necessarily* cause a breach of the debtor's contract with a creditor. It may or it may not. The debtor may acquire other property, in fact frequently does, and be entirely able to pay his debt within a short time, and hence it could never be certainly established that damage had resulted from the conspiracy until the statute of limitations had run or until the debtor had been discharged from the debt by death or the bankrupt court. But there is another consideration which seems of greater weight. Such a transfer is absolutely void so far as the creditor is concerned. As to him the property remains the property of his debtor. If it be in existence and be leviable, it may be levied on by attachment or execution, or if nonleviable it may be reached by garnishment and subjected to the creditor's claim.

Even though the property be concealed or disposed of by transferees a court of equity will, after it appears that an execution will not bring the money, compel the application of the value or proceeds of the property to the payment of the debt by the use of those equitable remedies which are well understood and need not be enumerated here.

These considerations make it clear that, when the con-

spirators (*i. e.* the transferees) are known, the fact of the fraudulent transfer has not breached the contract or made a future breach certain in any legal sense. The debt may yet be satisfied out of the transferred property itself if to be found, and if not, by equitable remedy against the transferee personally. The result of the conspiracy is not to prevent the creditor from getting his money, but is simply to reduce somewhat his chance of so doing, and perhaps to make the process longer.

This reduction of the chances of ultimate recovery is manifestly too speculative a thing to be measured in damages, but there must be actual legal damage shown to support an action for conspiracy, hence the difficulty of supporting such an action founded simply on a fraudulent transfer of property to defeat creditors, before any attempt to collect the debt by pursuing the property itself has been made.

This is in accordance with the weight of authority everywhere except in the state of Pennsylvania. *Field v. Siegel,* 99 Wis. 605, 75 N. W. 397, 47 L. R. A. 433 and note; 12 Ruling Case Law, p. 645, § 152, and notes 11 and 14.

The court's opinion draws a distinction between a conspiracy to defeat one specific contract or certain specific contracts and a conspiracy to defeat creditors generally, holding that in the first-named case the action for conspiracy may be maintained, but leaving the question open as to the last-named case.

There is, of course, no difference in the quality of the act whether the fraudulent transfer of property be made with intent to defeat one or ten or a hundred creditors. Nor is there any logical ground for holding that the one creditor has any special remedy which the ten or the hundred have not. If this were the law, then it would follow that in an action brought by one creditor claiming a conspiracy to defeat his claim alone, the conspirators could come in and prove that their intent was, not to defeat the plaintiff's claim alone, but

the claims of ninety-nine other honest men as well, and walk out of court with a clean bill of health. This would be absurd.

Now, if an action for damages for conspiracy lies whenever a transfer of this kind is made, it must lie in favor of each separate creditor, because each suffers a separate injury. Every such action is an action at law in which the defendants are entitled under the constitution to a jury trial. Const. art. I, sec. 5. Suppose there are fifty creditors with claims aggregating $25,000 and the property fraudulently conveyed aggregates $5,000. Of course the total damages recovered cannot exceed the value of the property transferred. If all the creditors commenced their actions at once and pressed them to trial and judgment so that the amount of debts became fixed and certain, a *pro rata* division might be made, perhaps, of the damages; but can any one acquainted with legal proceedings regard such a thing as possible or probable? A court of law has no machinery to handle such matters. This is not on account of any mere artificial rules of procedure or of the magical effect of the words Law or Equity, but on account of the practical impossibility of doing jury business as business without a jury can be done. As before said, each creditor will have his own separate cause of action; the alleged conspirators will be entitled to demand a jury trial in every such action; they will be entitled also to contest separately the validity of every claim; indeed they may be obliged to do so. Can any one imagine any more involved mass of litigation than such a situation would produce, and can any one imagine a satisfactory result coming therefrom? And how many years would it take to work out such result? The situation would be practically impossible in every case where there are many creditors and a small amount of property transferred. These considerations, among others, doubtless induced the courts to hold with practical unanimity (as held by this court in

the *Field Case, supra*) that a general creditor has no cause of action for conspiracy resulting from a fraudulent transfer of his debtor's property, but that his remedy is to reach after the property itself by attachment, garnishment, supplementary proceedings, or by appeal to equity after having exhausted his legal remedies against his debtor without success.    To my mind this doctrine seems to be good law, good sense, and good administration, and when the question is necessary to be decided I shall want some better reasons for abandoning it than have been given in the present case.

VINJE, J.    I concur in the foregoing opinion of Mr. Chief Justice WINSLOW.

ESCHWEILER, J.    I also.