SHERMAN D. STOCKER ET UX. *vs.* ALMA GILLETTE ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued December 7th, 1932—decided February 21st, 1933.

*Herman B. Engelman,* with whom was *Michael V. Blansfield,* for the appellants (plaintiffs).

*Maurice T. Healey, Jr.*, with whom, on the brief, was *William J. Larkin, Jr.*, for the appellee (defendant Alma Gillette).

HAINES, J. The plaintiffs are husband and wife, the latter being the daughter of Rhoda Gillette, while the defendant Alma Gillette is the wife of Alfred, a son of Rhoda Gillette. The original complaint was returned in March, 1930, but the following July Rhoda Gillette died, and in September the plaintiffs suggested her death upon the record and also suggested that her personal representative be substituted as defendant in her place, but this was not in fact done, and in September a substitute complaint was filed, Alma Gillette being then the only defendant. In that complaint it was alleged that in 1910 Rhoda Gillette had agreed to transfer her farm to the plaintiffs on certain conditions, or to provide for them by will; that they had performed the conditions, but that Rhoda Gillette, instead of making the transfer to them, had transferred the farm to her son Alfred upon the sole consideration that he would undertake to carry out the agreement she had made with them; that in violation of the agreement which he had made with Rhoda Gillette, he fraudulently connived with his wife, the defendant Alma Gillette, to defraud the plaintiffs, and in furtherance of the plan had transferred the farm to Alma Gillette, who now holds the title and refuses to perform Rhoda Gillette's agreement. It is also alleged that at the time of her transfer to her son, Rhoda Gillette was not in a mental condition to understand what she was doing or the purport of her act. It does not appear that the obvious defects in the complaint were attacked by demurrer, but a general denial and a special defense were filed, the latter setting up that the transfer from Rhoda Gillette to her

son was upon consideration that he divide the farm into several portions, giving certain portions to designated children of Rhoda, all as directed by her; that one portion, which, however, did not contain the farm buildings, was to be transferred to the plaintiff daughter upon payment of $500 alleged to be due for rental for the occupation of the farm by the plaintiffs for a number of years, and alleging that the defendant Alma was ready and willing to make that transfer upon receipt of the $500. Plaintiffs asked for a declaratory judgment, a deed of the property, and various other forms of relief, but before the case was committed to the jury all claims for relief were formally withdrawn save one for money damages. The jury returned a verdict of $4500 in favor of the plaintiffs, and the court set it aside on the ground that the evidence showed no fraud on the part of Alma Gillette, and that to force her to pay a money judgment which was not shown to be no more than the value of the property she had received, would be inequitable.

The record of the evidence is long and filled with conflicting testimony. Much could wisely have been omitted in the printing, and the record materially shortened. Notwithstanding these conflicts, there was evidence, which the jury were privileged to believe, from which they could reasonably have found that in 1910 Rhoda owned a fifty acre farm at Beacon Falls with some buildings thereon, including a farm house which was more than one hundred years old and in bad condition with no modern improvements; that by an agreement between them, Rhoda was to permit the plaintiffs to occupy the farm for a period of three years without rent while they made certain improvements, changes and repairs, they to furnish a home, board and lodging for her during her life; that she would, upon performance of that agreement, ensure the transfer of

the farm to them for their permanent home, and that the plaintiffs had performed their part of the agreement.

So far as the transfer to the son Alfred is concerned, there is no evidence from which the jury could reasonably have found that Rhoda made the transfer to enable him to carry out the agreement made with the plaintiffs. On the contrary, all the evidence shows, and the deposition of Rhoda herself taken shortly before her death states specifically, that the transfer was made on the distinct understanding between them that he was to divide the property and transfer the parcels to various children of Rhoda substantially as stated in the special defense set up by the defendant, and that the defendant was now ready and willing to transfer a certain designated parcel to the plaintiffs on payment of $500 as instructed by Rhoda. We are unable to find any evidence reasonably supporting the claim that the transfer was made on the consideration alleged by the plaintiffs and for the purpose of carrying out the contract which Rhoda had with the plaintiffs. In this respect we concur with the conclusion of the trial court expressed in the memorandum of decision on the motion to set aside the verdict.

The question then presented is whether a money judgment can be entered against this defendant who has accepted a conveyance alleged to be in violation of a contract made by the plaintiffs and Rhoda Gillette. The complaint states that that contract was an agreement by Rhoda to compensate the plaintiffs for the improvements made on the farm by the plaintiffs *either* by a conveyance of the entire farm, *or* that part of it upon which the buildings stood, *or* if no conveyance was made to the plaintiffs during the lifetime of Rhoda, that she would compensate them by will and generously provide for them. It is alleged that that

contract was breached by the conveyance made by Rhoda to Alfred and by him to the defendant and that this was done by the connivance of this defendant and for the purpose of defrauding the plaintiffs. It is at once apparent that under the alleged agreement Rhoda had the option of compensating the plaintiffs in any one of three ways. She was not bound to convey the farm or any part of it to the plaintiffs. Without any breach of the alleged contract, she could at any time convey the farm to others, in which event her agreement to compensate the plaintiffs by will would have become fixed and operative, and upon her failure to so provide, the remedy of the plaintiffs would be by a claim against her estate for damages. The evidence does not establish that either Alfred or Alma took the conveyance otherwise than in perfect good faith. It does not show that they knew of the agreement alleged in the complaint. The plaintiff Sherman did testify that at one time in the presence of all parties he spoke of an "agreement" with Rhoda, one of the provisions being that if the children of Rhoda wanted any lots on the flat, they were to have them, but the remainder of the farm was to go to the plaintiffs. This was clearly not the contract alleged, and it is not shown that Alfred or Alma ever knew of the latter. Even if they had known, they could still have accepted the conveyance in good faith and without liability to the plaintiffs, since Rhoda was legally free to convey the title. The defendant is not shown to be a co-conspirator, and the plaintiffs cannot invoke, as they now seem to do, the rule that where two or more parties combine to do an unlawful and fraudulent act and thus breach a contract, it is actionable conspiracy and, if carried out, all and each of those participating are liable in damages. *White* v. *White,* 132 Wis. 121, 111 N. W. 1116; *Schwenn* v. *Schwenn,* 166 Wis. 420, 166 N. W. 171.

The plaintiffs had no lien upon the farm subjecting it to their claim in the hands of the grantee, nor was the latter party to any agreement between Rhoda and the plaintiffs. In short, there is no basis in the evidence upon which, within the allegations of the complaint, a judgment for damages could lie against the defendant, and the verdict was properly set aside.

There is no error.

In this opinion the other judges concurred.